UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NATIONSTAR MORTGAGE, LLC, | Case No. 2:15-CV-1683 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| MAPLEWOOD SPRINGS HOMEOWNERS ASSOCIATION, et al., | |
| Defendant(s). | |

Presently before the court is defendant Maplewood Springs Homeowners' Association's (the "HOA") renewed motion to dismiss.  (ECF No. 75).  Plaintiff/counterdefendant Nationstar Mortgage, LLC ("Nationstar") filed a response (ECF No. 84), as did defendant/counterclaimant SFR Investments Pool 1, LLC ("SFR") (ECF No. 78), to which the HOA replied (ECF Nos. 82; 91).[1]

Also before the court is Deutsche Bank National Trust Company, as trustee for holders of the GSAA home equity trust 2006-11 asset backed certificates series 2006-11 ("Deutsche") and Nationstar's renewed motion for summary judgment.  (ECF No. 70).  The HOA and SFR filed responses (ECF Nos. 79, 87), to which Deutsche and Nationstar replied (ECF No. 89).

Also before the court is SFR's renewed motion for summary judgment.  (ECF No. 71). Deutsche and Nationstar filed a response, (ECF No. 83), to which SFR replied (ECF No. 93).

---

[1] SFR's response to the HOA's motion to dismiss (ECF No. 78) was made without leave of court and is violation of Local Rule 7-2.  The court will strike SFR's response to the motion to dismiss and the HOA's reply to that response (ECF No. 82).  *See, e.g.*, *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (holding that district courts have inherent power to control their own dockets); *see also* LR 7-2(g) ("The judge may strike supplemental filings made without leave of court.").

James C. Mahan
U.S. District Judge

1   Also before the court is the HOA's renewed motion for summary judgment (ECF No. 73).

2   No responses were filed and the time to respond has since passed.[2]

3   **I.   Facts**

4   The present case involves a dispute over real property located at 6229 Sugartree Avenue,

5   Las Vegas, Nevada (the "property").  (ECF No. 1 at 2).  Gholam H. Farzad (the "borrower")

6   purchased the property on April 13, 2006.  (ECF No. 1 at 3).  The borrower financed the

7   purchase with a $297,800.00 loan that was secured by a deed of trust dated April 13, 2006, and

8   recorded on April 24, 2006.  (ECF No. 1-1 at 2–18).

9   On October 10, 2012, the deed of trust was assigned to Deutsche, via an assignment of

10   deed of trust.  (ECF No. 1-2).

11   On February 7, 2013, Nevada Association Services, Inc. ("NAS"), as the HOA's trustee,

12   recorded a notice of delinquent assessment lien.  (ECF No. 1-5).  The notice asserted that the

13   borrower owed $1,409.08 in fees.  (ECF No. 1-5 at 2).

14   On August 9, 2013, NAS, as the HOA's trustee, recorded a notice of default and election

15   to sell to satisfy the delinquent assessment lien.  (ECF No. 1-6).  The notice asserted that the

16   borrower owed $2,632.74 in fees.  (ECF No. 1-6 at 2).  On the same day as it was recorded, NAS

17   mailed the notice of default and election to sell (via certified mail, return receipt requested) to the

18   borrower, Bank of New York Mellon, Deutsche Bank National Trust, Countrywide Home Loans,

19   Inc., and Mortgage Electronic Registration Services ("MERS").  (ECF Nos. 40 at 2; 40-2 at 4–5).

20   On October 1, 2013, Nationstar's interest in the deed of trust was recorded.  (ECF No. 1-

21   3).

22   On January 31, 2014, the HOA recorded a notice of trustee's sale through its agent.

23   (ECF No. 1-7).  The notice asserted that the borrower owed $4,106.60 in fees and that the

24   trustee's sale would occur on February 21, 2014.  (ECF No. 1-7 at 3).  On the same day as it was

25   recorded, NAS mailed the notice of trustee's sale (via certified mail, return receipt requested) to

26   ―――――――――――――――――

27   [2]  The HOA filed supplemental authorities (ECF No. 96) without leave of court and is in violation of Local Rule 7-2.  The court will strike the HOA's supplemental briefing.  *See, e.g.*,

28   *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (holding that district courts have inherent power to control their own dockets); *see also* LR 7-2(g) ("The judge may strike supplemental filings made without leave of court.").

**James C. Mahan**
**U.S. District Judge**

- 2 -

the borrower, Bank of New York Mellon ("BNYM"), Deutsche, Countrywide Home Loans, Inc., and Mortgage Electronic Registration Services ("MERS").  (ECF Nos. 40 at 2; 40-3 at 4–7).

NAS held the trustee's sale on April 4, 2014, at which SFR purchased the property for $16,000.00.  (ECF No. 70-8 at 2).  The foreclosure deed was recorded on April 7, 2014.  (ECF No. 70-8).

Nationstar filed the original complaint on August 31, 2015, asserting four claims against the HOA and SFR: (1) declaratory relief/quiet title; (2) breach of Nevada Revised Statute ("NRS") 16.1113 against the HOA; (3) injunctive relief against SFR; and (4) violation of procedural due process.  (ECF No. 1).  Nationstar contends that the notices prior to the HOA's foreclosure sale violated NRS Chapter 116, that the HOA violated NRS 116.1113 by falsely promising its liens were subordinate to the senior deed of trust and thereafter failing to notify Nationstar that its security interest was at risk, that the sale should be set aside as it was commercially unreasonable, and that Nevada's statutory scheme providing superpriority liens to homeowner's associations is violative of procedural due process under the Constitution.  (ECF No. 1).

On November 6, 2015, SFR filed an answer and counterclaim asserting three claims of relief against Nationstar, Deutsche, BNYM, and the borrower: (1) declaratory relief/quiet title; (2) preliminary and permanent injunction; and (3) slander of title.  (ECF No. 18).

## II.      Legal standard

### A.  Motion to dismiss

The court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not require detailed factual allegations, it does require more than labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Furthermore, a formulaic recitation of the elements of a cause of action will not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citation omitted).  Rule 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  *Id.* at 678–79.

James C. Mahan
U.S. District Judge

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* When a complaint pleads facts that are merely consistent with a defendant's liability, and shows only a mere possibility of entitlement, the complaint does not meet the requirements to show plausibility of entitlement to relief. *Id.*

In *Iqbal,* the Supreme Court clarified the two-step approach district courts are to apply when considering a motion to dismiss. *Id.* First, the court must accept as true all of the allegations contained in a complaint. *Id.* However, this requirement is inapplicable to legal conclusions. *Id.* Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.* at 679. When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

## B. Motion for summary judgment

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

James C. Mahan
U.S. District Judge

- 4 -

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040,

James C. Mahan
U.S. District Judge

- 5 -

1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial.  *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986).  Nonmovant's evidence is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   Discussion[3]**

The HOA seeks to dismiss Nationstar's claims and argues: (1) that Nationstar does not have an adverse interest in the property to sustain a claim of declaratory relief/quiet title; (2) that NRS 38.310 bars claims based on covenants, conditions and restrictions ("CC&Rs") that have not first been mediated; and (3) that NRS 116.31162–31168's notice provisions satisfy due process.  (ECF No. 75 at 2).

**A.  Motion to dismiss**

***1.  Injunctive relief***

Preliminarily, this court turns to Nationstar's cause of action for injunctive relief.  (ECF No. 1 at 8–9).  Though the parties omit argument for dismissing this cause of action in the briefing, the court finds no sustainable cause of action for injunctive relief.  In fact, injunctive relief is a remedy, not a cause of action.  *See, e.g.*, *Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 Fed. Appx. 680, 684 (9th Cir. 2014) (citation omitted).  If Nationstar still seeks this remedy, it would

---

[3]   The 2015 Legislature substantially revised Chapter 116.  2015 Nev. Stat., ch. 266. Because Chapter 116 operates by allowing a foreclosure sale only after specific conditions are met, the court must look at the statutes in effect on the day of the sale: April 4, 2014.  *See* Nev. Rev. Stat. § 116.31162 (providing that the association may foreclose its lien by sale after all of the statutory provisions occur);  *Saticoy Bay LLC Series 2021 Gray Eagle Way v. JPMorgan Chase Bank, N.A.*, --- P.3d ---, 133 Nev. Adv. Op. 3, at *4 (Nev. 2017) ("Under NRS 116.31162(1), an HOA may foreclose its lien by sale only after it takes certain steps.").  As such, the references in this order to statutes codified in Chapter 116 are to the statutes in effect on that date unless otherwise noted.

1    properly be brought as a motion under Federal Rule of Civil Procedure 65.  Therefore, the court

2    will dismiss Nationstar's claim for injunctive relief.

3                                    *2.  Untimely response*

4           The local rules have the force of law.  *See United States v. Hvass*, 355 U.S. 570, 574–575

5    (1958).  Under Local Rule 7-2(d), "[t]he failure of an opposing party to file points and authorities

6    in response to any motion . . . constitutes a consent to the granting of the motion."  The Ninth

7    Circuit instructs that a district court must weigh several factors before granting a motion filed

8    pursuant to Federal Rule of Civil Procedure 12 because a party failed to comply with a local rule:

9    "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its

10   docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of

11   cases o[n] their merits; and (5) the availability of less drastic sanctions."  *Ghazali v. Moran*, 46

12   F.3d 52, 53 (9th Cir. 1995) (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986))

13   (discussing a Nevada local rule construing a failure to oppose a motion as effectively consenting

14   to the granting of that motion); *see also Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003)

15   (indicating that *Ghazali* provides the applicable rule for evaluating a Rule 12 motion to dismiss in

16   light of a local rule authorizing dismissal).

17          Indeed, Nationstar and Deutsche failed to timely respond in accordance with Local Rule 7-

18   2.  *See* (ECF No. 72, HOA's Motion to Dismiss) (filed on August 26, 2016; responses due by

19   September 12, 2016); *see also* (ECF No. 84; Nationstar and Deutsche's responses) (filed on

20   September 19, 2016).  However, this court finds that the public policy favoring disposition of cases

21   on their merits outweighs any prejudice to SFR.  *See Ghazali*, 46 F.3d at 53.

22          This court also finds that granting the HOA's motion to dismiss would not enhance the

23   court's ability to effectively manage its docket.  *See Ghazali*, 46 F.3d at 53.  Additionally, the

24   HOA would neither be forced to wait for plaintiff's response, nor prejudiced in an outcome on the

25   merits as the responses are now on record, as is SFR's reply.

26          This court acknowledges the public's interest in an expeditious resolution of litigation.  *See*

27   *id.*  However, dismissal is an inappropriate sanction in this circumstance because, *inter alia*,

28

James C. Mahan
U.S. District Judge

- 7 -

1    Nationstar and Deutsche's responses are on record, and the HOA has already replied to those

2    responses.  *See* (ECF Nos. 83, 84, 91).

3        Accordingly, the court will not dismiss Nationstar's complaint, and continues with its

4    analysis under the briefings.

5                     *3.   Declaratory Relief/Quiet Title*

6        In Nevada, "[a]n action may be brought by any person against another who claims an estate

7    or interest in real property, adverse to the person bringing the action for the purpose of determining

8    such adverse claim."  Nev. Rev. Stat. § 40.010.  "A plea to quiet title does not require any particular

9    elements, but 'each party must plead and prove his or her own claim to the property in question'

10   and a 'plaintiff's right to relief therefore depends on superiority of title."  *Chapman v. Deutsche*

11   *Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (quoting *Yokeno v. Mafnas*, 973 F.2d 803,

12   808 (9th Cir. 1992)).

13       The HOA maintains that it does not have a current adverse interest in the property as

14   required by a plea to quiet title under NRS 40.010 and asks the court to dismiss it from this claim.

15   (ECF No. 75 at 6).  The HOA states it never made a claim to title, and that while it had a lien on

16   the property in the past, it does not currently.  (ECF No. 75 at 6).

17       Under rule 19(a), a party must be joined as a "required" party in two circumstances: (1)

18   when "the court cannot accord complete relief among existing parties" in that party's absence, or

19   (2) when the absent party "claims an interest relating to the subject of the action" and resolving

20   the action in the person's absence may, as a practical matter, "impair or impede the person's ability

21   to protect the interest," or may "leave an existing party subject to a substantial risk of incurring

22   double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P.

23   19(a)(1).

24       This court has previously held that dismissal is appropriate when the holder of the prior

25   deed of trust seeks a declaration that the deed of trust survived foreclosure sale.  *See, e.g.*, *Bayview*

26   *Loan Servicing, LLC v. SFR Investments Pool 1, LLC*, No. 2:14-CV-1875-JCM-GWF, 2015 WL

27   2019067, at *1 (D. Nev. May 1, 2015).  In contrast, this court has also held that dismissal is

28   inappropriate in these circumstances when the holder of the prior deed of trust challenges the

**James C. Mahan**
**U.S. District Judge**

validity of the foreclosure sale.  *See, e.g.*, *Nationstar Mortg., LLC v. Berezovsky*, No. 2:15-CV-909-JCM-CWH, 2016 WL 1064477, at *3–4 (D. Nev. Mar. 2016).  Therefore, the nature of the remedy sought dictates the necessary parties.

Here, the court cannot dismiss the HOA as a party to the quiet title action because Nationstar alleges that the HOA foreclosure sale is void.  If Nationstar succeeds in invalidating the foreclosure sale, ownership of the property would likely revert to the borrower, SFR may be entitled to recover from the HOA, and the HOA's lien against the property may be restored.  Consequently, the HOA is, at least nominally, a necessary party to the suit.  The HOA's motion to dismiss is therefore denied with respect to Nationstar's quiet title claim.

### 4.  Breach of NRS 116.1113

The HOA asserts that Nationstar's claim for breach of NRS 116.1113 must be dismissed as it has not been submitted to mediation or arbitration in violation of NRS 38.310.  (ECF No. 75 at 3–4).

Section 38.310 provides, in relevant part:

> No civil action based upon a claim relating to: (a) [t]he interpretation, application, or enforcement of any covenants, conditions or restrictions applicable to residential property or any bylaws, rules or regulations adopted by an association . . . may be commenced in any court in this State unless the action has been submitted to mediation or, if the parties agree, has been referred to a program pursuant to the provisions of NRS 38.300 to 38.360, inclusive . . . .

Nev. Rev. Stat. § 38.310(1).  Subsection (2) continues, stating that a "court shall dismiss any civil action which is commenced in violation of the provisions of subsection 1."  Nev. Rev. Stat. § 38.310(2).

Under NRS 38.300(3), a civil action includes "an action for money damages or equitable relief," but not "an action in equity for injunctive relief in which there is an immediate threat of irreparable harm, or an action relating to the title to residential property."  Violation of NRS 116.1113 is a "civil action[] as defined in NRS 38.300."  *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555, 558 (Nev. 2013) (finding that a claim for violation of NRS 116.1113 was properly dismissed for lack of compliance with NRS 38.310).

Nationstar argues that NRS 38.310 cannot affect this court's subject matter jurisdiction.  (ECF No. 84 at 8).  The court disagrees.  NRS 38.310 is an exhaustion statute that creates

James C. Mahan
U.S. District Judge

1  prerequisites for filing certain state-law claims, not a jurisdictional statute.  *See McBride Cotton*

2  *& Cattle Corp. v. Veneman*, 290 F.3d 973, 978 (9th Cir. 2002); *see also*, *Carrington Mortg. Servs.,*

3  *LLC, v. Absolute Bus. Sols.*, LLC, No. 2:15–cv–01862–JAD–PAL, 2016 WL 1465339, at *3 (D.

4  Nev. Apr. 14, 2016).

5        Consequently, because an alleged violation of NRS 116.1113 is defined as a civil action

6  under Nevada law and the claim present here has not been submitted to mediation, the court will

7  dismiss Nationstar's claim for breach of NRS 116.1113 against the HOA pursuant to NRS 38.310.

8  **5.   *Violation of procedural due process***

9        SFR argues that Nationstar's claim for violation of procedural due process should be

10  dismissed because Nationstar has not pleaded a state actor as required under a procedural due

11  process claim.  (ECF No. 75 at 11–12).  Additionally, SFR claims that the Nevada Supreme Court

12  has ruled the statutory scheme set forth in NRS Chapter 116 not violative of due process.  (ECF

13  No. 75 at 13–14).  The court disagrees.

14        The Ninth Circuit held that the Nevada legislature's enactment of Chapter 116 constituted

15  state action.  *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016)

16  ("*Bourne Valley*").  The *Bourne Valley* court also held that NRS 116.3116's "opt-in" notice

17  scheme, "which required a homeowners' association" to alert a mortgage lender that it intended to

18  foreclose only if the lender had affirmatively requested notice, facially violated the lenders'

19  constitutional due process rights."  *Id.* at 1155.

20        The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS

21  116.31163(2).  *See id.* at 1158.  At issue is the "opt-in" provision that unconstitutionally shifts the

22  notice burden to holders of the property interest at risk.  Due process requires "notice reasonably

23  calculated, under all circumstances, to apprise interested parties of the pendency of the action and

24  afford them an opportunity to present their objections."  *Id.* at 1158 (quoting *Mennonite Bd. of*

25  *Missions v. Adams*, 462 U.S. 791, 795 (1983)) (internal quotation marks omitted).

26        However, to sustain a claim for violation of procedural due process, plaintiff must allege

27  "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by

28

**James C. Mahan**
**U.S. District Judge**

1   the government; (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th

2   Cir. 1986).

3       In its complaint, Nationstar asserted its interest in a senior deed of trust encumbering the

4   property.  (ECF No. 1 at 4).  Nationstar also alleged "[a]s a result of the April 4, 2014 HOA

5   foreclosure sale SFR claims an interest in the property, and on information and belief, asserts SFR

6   owns the property free and clear of the senior deed of trust." (ECF No. 1 at 6).  These allegations

7   sufficiently establish the first two elements to a violation of procedural due process claim.  *See id*.

8       Nationstar insufficiently alleged a lack of process.  *See id.*  Nationstar neither confirms nor

9   denies actually having received any of NAS' notices of trustee's sale.  *See* (ECF No 1).  Rather,

10  Nationstar alleges that, "the recorded notices, even if they were in fact provided, failed to describe

11  the lien in sufficient detail as required by Nevada law." (ECF No. 1 at 6).  Nationstar states that

12  the notices did not identify a super-priority amount, detail where or how to pay the amount, or

13  detail the consequences of failing to pay (ECF No. 1 at 5). These allegations are insufficient to

14  sustain a claim of violation of procedural due process.  As offered above, procedural due process

15  affords an interested party "notice reasonably calculated . . . of the pendency of the action and . . .

16  an opportunity to present [an] objection."  *Bourne Valley*, 832 F.3d at 1158 (quoting *Mennonite*,

17  462 U.S. 791, 795 (1983)) (internal quotation marks omitted).

18      Taking as true the allegations in the complaint, Nationstar has not alleged a lack of process

19  such that it had no notice to apprise it of the pendency of the action that would deprive it of its

20  interest in the property.  Therefore, the court will dismiss Nationstar's claim of violation of

21  procedural due process.

22      As Nationstar's claim for declaratory relief/quiet title survives, the court turns its attention

23  to the motions for summary judgment.

24  . . .

25  . . .

26  . . .

27  . . .

28  . . .

James C. Mahan
U.S. District Judge

- 11 -

**B.  Motions for summary judgment[4]**

In its motion, SFR moves for summary judgment on its cross/counterclaims for quiet title, preliminary and permanent injunction, and slander of title (ECF No. 71), whereas the Banks move for summary judgment on their quiet title claim (ECF No. 70).

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim."  Nev. Rev. Stat. § 40.010.  "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title."  *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted).  Therefore, for claimant to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others.  *See Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

SFR asserts that summary judgment in its favor is proper because, *inter alia*, the foreclosure sale extinguished Nationstar's deed of trust pursuant to NRS 116.3116 and *SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 412–14 (Nev. 2014) ("*SFR Investments*") and because Nationstar has not met the fraud, unfairness, or oppression requirement to set aside a foreclosure sale as outlined in *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105, 1112 (Nev. 2016) ("*Shadow Wood*").  (ECF No. 71).

The HOA echoes some of SFR's arguments in its motion for summary judgment, asserting that summary judgment is appropriate as to SFR's quiet title action.  (ECF No. 73).  However,

---

[4]  As an initial matter, the court takes judicial notice of the following recorded documents: first deed of trust (ECF No. 71-2 at 16–44); assignment of deed of trust (ECF No. 71-2 at 45–46; assigning the first deed of trust to Deutsche); assignment of deed of trust (ECF No. 71-2 at 47–48; assigning the first deed of trust to BNYM); assignment of deed of trust (ECF No. 71-2 at 52–116; assigning the first deed of trust to Nationstar); notice of delinquent assessment (ECF No. 71-2 at 49); notice of default and election to sell (ECF No. 71-2 at 50–51); notice of trustee's sale (ECF No. 71-2 at 54–55); and foreclosure deed (ECF No. 71-9).  *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute); *Intri-Plex Tech v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

1  most of the issues that the HOA argues in its motion for summary judgment are moot because the

2  claims have been dismissed.  (ECF No. 73 at 1–2).  The court will consider any arguments offered

3  by the HOA as they relate to the remaining issues under quiet title.

4       The Banks contend that summary judgment in their favor is proper because the foreclosure

5  sale was commercially unreasonable, the foreclosure sale is invalid because the notice scheme of

6  NRS Chapter 116 is facially unconstitutional, and *SFR Investments* should not be applied

7  retroactively.  (ECF No. 70).

8       Notably, the Nevada Supreme Court has held that foreclosure of an HOA superpriority lien

9  under Chapter 116 will extinguish all lower priority interests.  *See SFR Investments*.  If this court

10  finds a properly conducted foreclosure sale, only through equity will Nationstar prevail.  However,

11  "a court of equity acts with caution."  *Hurley v. Kincaid*, 285 U.S. 95, 104 n.3 (1932).  Indeed, the

12  court finds that exercising such caution is warranted in this case.

13          ***1.  Nev. Rev. Stat. § 116.3116***

14       NRS § 116.3116(1) gives an HOA a lien on its homeowners' residences for unpaid

15  assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other

16  liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit

17  recorded before the date on which the assessment sought to be enforced became delinquent."  Nev.

18  Rev. Stat. § 116.3116(2)(b).  The statute then carves out a partial exception to subparagraph

19  (2)(b)'s exception for first security interests.  *See* Nev. Rev. Stat. § 116.3116(2).  In *SFR*

20  *Investments*, the Nevada Supreme Court provided the following explanation:

21      As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces,
       a superpriority piece and a subpriority piece.  The superpriority piece, consisting of

22      the last nine months of unpaid HOA dues and maintenance and nuisance-abatement
       charges, is "prior to" a first deed of trust.  The subpriority piece, consisting of all

23      other HOA fees or assessments, is subordinate to a first deed of trust.

24  334 P.3d at 411 (Nev. 2014).

25       NRS Chapter 116 permits an HOA to enforce its superpriority lien by nonjudicial

26  foreclosure sale.  *Id*. at 415.  Thus, "NRS 116.3116(2) gives an HOA a true superpriority lien,

27  proper foreclosure of which will extinguish a first deed of trust."  *Id*. at 419; *see also* Nev. Rev.

28

James C. Mahan
U.S. District Judge

1    Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon

2    compliance with the statutory notice and timing rules).

3         The holder of a first deed of trust may pay off the superpriority interest to keep its interest

4    from being extinguished upon foreclosure of an HOA superpriority lien.  *See SFR Investments*,

5    334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to

6    avert loss of its security . . . ."); *see also 7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et

7    al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result,

8    they readily can preserve their security interests by buying out the senior lienholder's interest."

9    (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers

10   Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

11              ***2.  Foreclosure deed recitals***

12        SFR asserts that it has met its burden to show good title in itself because the foreclosure

13   sale complied with NRS 116.3116 and *SFR Investments*.  (ECF No. 71 at 10).  SFR argues that the

14   recorded foreclosure deed provides conclusive effect regarding the statutory prerequisites to a

15   valid HOA lien foreclosure sale.  (ECF No. 71 at 10).  Thus, SFR maintains, the foreclosure sale

16   extinguished Nationstar's deed of trust as a matter of law.  (ECF No. 71 at 9–13).

17        In response, the Banks argue that SFR's reliance on the foreclosure deed's recitals to

18   prove—as a matter of law—that the foreclosure sale quiets title, is contrary to the court's holding

19   in *Shadow Wood*.  (ECF No. 83 at 4–5).  The Banks claim that the foreclosure deed's recitals, as

20   held in *Shadow Wood*, are conclusive proof only as to default, notice, and publication of the notice

21   of sale; and are not conclusive as to commercial reasonableness.  (ECF No. 83 at 4).

22        The court agrees with this argument.  NRS 116.31166(1) provides:

23        1.  The recitals in a deed made pursuant to NRS 116.31164 of:
     (a) Default, the mailing of notice of delinquent assessment, and the recording of
24        the notice of default and election to sell;
     (b) The elapsing of the 90 days; and
25   (c) The giving of notice of sale,
     Are conclusive proof of the matters recited.
26
     Nev. Rev. Stat. § 116.31166(1).
27
          NRS 116.31166's enactment[] did not eliminate the equitable authority of the
28        courts to consider quiet title actions when an HOA's foreclosure deed contains
          conclusive recitals.  We therefore reject [the] contention that NRS 116.31166

James C. Mahan
U.S. District Judge                              - 14 -

defeats, as a matter of law, [an] action to set aside the trustee's deed and to quiet title in itself.

*Shadow Wood*, 366 P.3d at 1112.

Here, SFR has provided the recorded trustee's deed upon sale (ECF No. 71-9), as well as the recorded notice of delinquent assessment lien (ECF No. 71-2 at 49), the recorded notice of default and election to sell (ECF No. 71-2 at 50), and the recorded notice of trustee's sale (ECF No. 71-2 at 55).  Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with the default, notice, publication of the notice of default, and timing statutory prerequisites of a valid foreclosure provided under NRS 116.31162 through NRS 116.31164.

In light of the foregoing, the court will grant SFR's motion for summary judgment as it relates to the foreclosure sale's compliance with the statutory prerequisites set forth in NRS 116.31166.  Importantly, these recitals' conclusive effects "do not defeat equitable relief . . . rather, such recitals are conclusive, *in the absence of grounds for equitable relief*."  *Shadow Wood*, 336 P.3d at 1111–12 (citation omitted) (emphasis in original).

### 3.  Equitable relief

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression."  366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 858 (D. Nev. Apr. 29, 2016).  In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression."  *Shadow Wood*, 366 P.3d at 1112; *see also Long v. Towne*, 639 P.2d 528 (Nev. 1982).

#### i.  Inadequate price

Nationstar argues that the purchase price of $16,000.00 in light of the $210,000.00 property appraisal value is grossly inadequate because the purchase price is 7.6% of the property's value. (ECF No. 70 at 7).  As support, Nationstar provides the appraisal report of Matthew Lubawy,

wherein Lubawy concluded that on April 4, 2014, the property's value was $210,000.00.  (ECF No. 70-9 at 9).

The general rule requires a 20% sale price of fair market value to establish gross inadequacy.  *See Shadow Wood*, 366 P.3d at 1112.  The *Shadow Wood* court remanded for further fact-finding, but noted that it had approved sales for as low as 28.5% and that the apparent 23% ratio in that case was not "obviously" inadequate.  *See id.* (citing *Golden v. Tomiyasu*, 387 P.2d 989, 993 (Nev. 1963); Restatement (Third) of Prop.: Mortgages § 8.3 cmt. b (1997)).

Here, the Banks have satisfied its initial burden as to gross inadequacy by setting forth the evidence that the property was purchased at the foreclosure sale for 7.6% of its market value.  *See* (Lubawy report, ECF No. 70-9 at 9 (estimating a $210,000.00 property value on the foreclosure sale date); foreclosure deed, ECF No. 71-9 (indicating sale for $16,000.00)); *see also Nationstar Mortg., LLC*, 184 F. Supp. 3d at 857 (finding sale price of less than 5% of the secured amount sufficient to satisfy initial burden of showing gross inadequacy).

In response, SFR argues Lubawy's expert report is faulty in that it failed to value the property in its current state.  (ECF No. 87 at 8).  SFR maintains that Lubawy "assumed fee simple property rights were being transferred, and assumed that 'title is good and marketable' when the reality facing the market was that lenders were potentially challenging title in subsequent litigation."  (ECF No. 87 at 8).  To show this inadequacy, SFR offers its own rebuttal expert report indicating the sale price as an average one for homes sold at NRS 116 foreclosure sales.  (ECF No 87-1 at 37).

The conflicting reports generate a genuine dispute of material fact, such that granting summary judgment for the Banks would be inappropriate.  *See, e.g.*, *Nationstar Mortg., LLC*, 184 F. Supp. 3d at 857 (denying summary judgment on gross inadequacy because opposing expert report concluded fair market value of $9,000.00 based on similar homes sold for similar amounts at similar HOA sales, finding that a reasonable jury could accept this theory over the traditional sales of comparable properties).

. . .

. . .

James C. Mahan
U.S. District Judge

- 16 -

1          *ii.    Fraud, unfairness, or oppression*

2          On a motion for summary judgment, the Banks must also demonstrate sufficient grounds

3     to justify setting aside the foreclosure sale.  In other words, inadequate price is not enough to

4     warrant setting aside a foreclosure sale; there must also be a showing of fraud, unfairness, or

5     oppression.  *See Shadow Wood*, 366 P.3d at 1112; *Long*, 639 P.2d at 530.

6          The Banks attempt to claim that a grossly inadequate price alone is enough to show fraud,

7     unfairness, or oppression.  (ECF No. 70 at 5–7).  The Banks rely on their assertion that the Nevada

8     Supreme Court adopted the Restatement (Third) of Property: Mortgages in *Shadow Wood* to prove

9     they have met their burden at trial.  (ECF No. 70 at 5–7).  In support, the Banks quote a

10    parenthetical explanation, which quotes the Restatement, and attempt to pass it off as the court's

11    holding in *Shadow Wood*.  (ECF No. 70 at 6).

12         The *Shadow Wood* court makes no such holding.  Furthermore, no language exists in

13    *Shadow Wood* that exhibits the Nevada Supreme Court's intention to adopt the Restatement.

14    *Compare Shadow Wood*, 366 P.3d at 1112 (citing the Restatement as secondary authority to

15    warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village,*

16    *Inc. v. Cunningham*, 210 P.3d 190, 191 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement

17    in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012)

18    ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm

19    section 51."); and *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013)

20    (affirmatively adopting the Restatement (Second) of Torts section 592A).

21         Because Nevada courts have not adopted the relevant section(s) of the Restatement at issue

22    here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a

23    grossly inadequate sale price to set aside a foreclosure sale, controls.  *See* 639 P.2d at 530.

24         *iii.    Bona fide purchaser*

25         Moreover, when sitting in equity, "courts must consider the entirety of the circumstances .

26    . . .  This includes considering the status and actions of all parties involved including whether an

27    innocent party may be harmed by granting the desired relief."  *Shadow Wood*, 366 P.3d at 1114

28    (citation omitted).  The issue of bona fide purchaser ("BFP") status is distinct from that of the

**James C. Mahan**
**U.S. District Judge**

conclusiveness of deed recitals.  Specifically, the issue of BFP status "concerns a buyer's knowledge of competing interests," whereas the other "concerns a statutory presumption that can be equitably overcome under *Shadow Wood*."  *See, e.g.*, *Nationstar Mortg., LLC*, 184 F. Supp. at 859.

A BFP is a person who purchases real property "for a valuable consideration and without notice of the prior equity, and without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry." *Bailey v. Butner*, 176 P.2d 226, 234 (Nev. 1947) (emphasis omitted); *see also Moore v. De Bernardi*, 220 P. 544, 547 (Nev. 1923) ("The decisions are uniform that the bona fide purchaser of a legal title is not affected by any latent equity founded either on a trust, [e]ncumbrance, or otherwise, of which he has no notice, actual or constructive.").  Under Nevada law, "bona fide purchaser" means as follows:

> Any purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bona fide purchaser.

Nev. Rev. Stat. § 111.180(1).  "In other words, a later-obtained interest can prevail over an earlier-obtained interest where the later purchaser has no knowledge of the previous interest and records his interest first."  *See Nationstar Mortg., LLC*, 184 F. Supp. 3d at 860.

SFR argues that it paid value for the property and took without notice of a competing or superior interest in the property at the time of the foreclosure sale.  (ECF No. 71 at 20–22).  The Banks provide no competent evidence sufficient to raise a genuine dispute as to SFR's status as a bona fide purchaser.  Rather, the Banks merely assert without adequate support that SFR is a professional property purchaser and concludes that such basis alone is sufficient to preclude SFR's status as a BFP.  (ECF No. 83 at 7–9).  Such conclusory allegations without specific facts supported by competent evidence are insufficient to raise a genuine issue for trial.  *See Celotex*, 477 U.S. at 324.

. . .

. . .

James C. Mahan
U.S. District Judge

- 18 -

1

*iv.    Pre-foreclosure remedies*

2      Because, when sitting in equity, "courts must consider the entirety of the circumstances,"

3  this court turns its attention to the Banks' pre-foreclosure actions. *Shadow Wood*, 366 P.3d at 1114

4  (citation omitted).

5      Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority

6  portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest.

7  *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior

8  lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see*

9  *also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149

10  (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their

11  security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of*

12  *Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev.

13  1980))).

14      The Banks did not tender, or even attempt to tender, the amount owed under any of the

15  notices.  Had the Banks paid the amount set forth in any of the notices (ECF No. 71-2 at 49, notice

16  of delinquent assessment lien, total amount owed: $1,409.08; ECF No. 71-2 at 50, notice of default

17  and election to sell, total amount owed: $2,632.74; ECF No. 71-2 at 55, notice of foreclosure sale,

18  total amount owed: $4,106.60), the HOA's interest would have been subordinate to the first deed

19  of trust.  *See* Nev. Rev. Stat. § 116.31166(1).  Rather than tendering an amount and then later

20  seeking a refund of any difference, the Banks decided to not tender any amount.  *See SFR*

21  *Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount

22  and then sue for a refund).

23      After failing to use the legal remedies available to them to prevent the property from being

24  sold to a third party—for example, seeking a temporary restraining order and preliminary

25  injunction and filling a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—the

26  Banks now seek to profit from their own failure to follow the rules set forth in the statutes.  *See*

27  *generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when

28  a subordinate interest has failed to make good the deficiency in performance or payment for 35

**James C. Mahan**
**U.S. District Judge**

1   days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is

2   made good at least 5 days prior to sale); *cf. Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277

3   (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief

4   she asks without doing great injustice to other innocent parties who would not have been in a

5   position to be injured by such a decree as she asks if she had applied for relief at an earlier day.").

6       Not only have the Banks not provided evidence substantiating the fraud, unfairness, or

7   oppression element under the *Long* test, but their pre-foreclosure inactions weigh heavily against

8   equitable relief.   Weighing the totality of the circumstances at issue here, the court finds it

9   inequitable to set aside the foreclosure sale.

10                  *4.  Due process*

11      In its motion, Nationstar asserts that the notice scheme of NRS Chapter 116 is facially

12  violative of the due process clause; therefore, the foreclosure sale is invalid.  (ECF No. 70 at 7–

13  12).

14      The HOA and SFR argue that the foreclosure sale could not be unconstitutional because it

15  lacked state action.  (ECF Nos. 73 at 12, 87 at 18).  They also contend that the constitutional

16  avoidance doctrine applies such that the statute is presumed constitutional.  (ECF Nos. 73 at 15,

17  87 at 23).  The court disagrees.

18      The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required an

19  HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively

20  requested notice, facially violated mortgage lenders' constitutional due process rights.  *Bourne*

21  *Valley*, 832 F.3d at 1157–58.  The *Bourne Valley* court also held that the Nevada legislature's

22  enactment of Chapter 116 constituted state action.  *Id.* at 1154.  Therefore, *Bourne Valley* clearly

23  rejects both of defendants' arguments.  *See id.*

24      This court declines to follow the Nevada Supreme Court's recent decision in *Saticoy Bay*

25  *LLC Series 350 Durango 104 v. Wells Fargo Home Mortg.*, ---P.3d---, 133 Nev. Adv. Op. 5 (Nev.

26  2017), as clear, recent, and binding precedent exists to resolve this issue.  *See Bourne Valley*, 832

27  F.3d at 1157–58.  Accordingly, this court rejects SFR and the HOA's argument that state action

28  does not exist.

James C. Mahan
U.S. District Judge

1    Nationstar's claim, however, similarly fails.   (ECF No. 70 at 7–12).   The facially

2    unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2).   *Bourne*

3    *Valley* 832 F.3d at 1158.   At issue is the "opt-in" provision that unconstitutionally shifts the notice

4    burden to holders of the property interest at risk.   As asserted before, but bearing weight here, is

5    that due process requires "notice reasonably calculated, under all circumstances, to apprise

6    interested parties of the pendency of the action and afford them an opportunity to present their

7    objections."   *Id.* at 1158 (citing *Mennonite*, 462 U.S. 791, 795 (1983) (quotation omitted).

8    Nationstar has not suffered an injury related to the unconstitutional provision in NRS

9    116.31163(2).   To raise question of constitutionality, the party must have sufficient Article III

10   standing, including, *inter alia*, a "personal injury fairly traceable to the . . . allegedly unlawful

11   conduct."   *Raines v. Byrd*, 117 U.S. 811, 818–19 (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984))

12   (emphasis omitted).   Importantly, the Ninth Circuit has held that receipt of actual notice deprives

13   a claimant of standing to raise a procedural due process claim.   *Wiren v. Eide*, 542 F.2d 757, 762

14   (9th Cir. 1976)

15   Here, adequate notice was given to the interested parties prior to extinguishing a property

16   right.   Nationstar recorded its interest in the property on October 1, 2013.   (ECF No. 1-3).   Prior

17   to this recording, on August 19, 2013, the HOA notified interested parties of the potential

18   foreclosure by sending them a notice of default and election to sell.   (ECF No. 40-2).   Nationstar

19   was not entitled to this notification because, on August 19, 2013, Nationstar had not yet recorded

20   its property interest.   (ECF No. 1-3).

21   After Nationstar recorded its interest in the property, it received adequate notice to satisfy

22   due process.   On February 10, 2014, the HOA again notified interested parties—this time including

23   Nationstar—by sending them a recorded notice of trustee's sale.   (ECF Nos. 40 at 2, 40-3).   The

24   notice of trustee's sale included (1) the name, address, and telephone number of the trustee

25   conducting the sale, (2) the property at issue, (3) the time, date, and location that the sale will

26   occur, and (4) the amount owed to satisfy the lien.   (ECF Nos. 40 at 2, 40-3 at 3).   Whereas notice

27   by mail to ensure actual notice is the minimum constitutional requirement, the notice here

28

James C. Mahan
U.S. District Judge

1   specifically laid out procedures to prevent extinguishment of the property interest.  *See Mennonite*,

2   462 U.S. at 800.

3        As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect

4   inherent in NRS 116.31163(2) because it put Nationstar on notice that its interest was subject to

5   pendency of action and offered all of the constitutionally required information.  Therefore, the

6   court will deny Nationstar's motion for summary judgment as it relate to the quiet title issue of

7   due process.

8                    *5.   Retroactive application of* **SFR Investments**

9        Nationstar posits that the court should not apply *SFR Investments* retroactively to

10  extinguish its deed of trust.  (ECF No. 70 at 12).

11       The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous

12  cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec.*

13  *Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC*

14  *Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev.

15  Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR*

16  *Investments*, reasoning that "the district court's decision was based on an erroneous interpretation

17  of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL

18  315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's

19  conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*").  Thus, *SFR*

20  *Investments* applies to this case.Accordingly, the court will deny Nationstar's motion for summary

21  judgment as to this question.

22                        *6.   Preliminary & permanent injunction*

23       SFR requests that the Banks and the borrowers be enjoined from any sale or transfer that

24  would affect SFR's title to the property.  (ECF No. 71 at 14).

25       As discussed above, the court follows the well-settled rule that a claim for "injunctive

26  relief" standing alone is not a cause of action.  Thus, the court will dismiss this claim.

27  . . .

28  . . .

James C. Mahan
U.S. District Judge

- 22 -

### 7.  *Slander of title*

Under Nevada law, a slander of title claim involves (1) false and malicious communications (2) disparaging to one's title in land (3) causing special damages.  *See Higgins v. Higgens*, 744 P.2d 530, 531 (Nev. 1987) (citations omitted); *see also Rowland v. Lepire*, 662 P.2d 1332, 1335 (Nev. 1983) ("The requisites to an action for slander of title are that the words spoken be false, that they be maliciously spoken and that the plaintiff sustain some special damage as a direct and natural result of their having been spoken.").  Additionally, a defendant must know that "the statement was false or act in reckless disregard of its truth or falsity."  *Rowland*, 662 P.2d at 1335.

Further, a "plaintiff alleging a claim for slander of title must meet a heightened pleading standard."  *See, e.g.*, *Velazquez v. Mortg. Elec. Registration Sys., Inc.*, No. 2:11-CV-576 JCM CWH, 2012 WL 5288141, at *5 (D. Nev. Oct. 23, 2012).

Here, SFR fails to assert any words spoken by the Banks, let alone any false words spoken by them.  SFR relies on the recorded assignments, arguing that the statements contained therein were false, but fails to provide any evidence that these recordings were maliciously filed.  Further, while SFR asserts that the Banks knew that the deed of trust was extinguished because of *SFR Investments*, the Banks initiation of the instant action for declaratory relief suggests the contrary.

Accordingly, SFR has failed to show that it is entitled to judgment as to this claim, and the court will deny SFR's motion for summary judgment on its slander of title claim.

### IV.  Conclusion

Based on the foregoing, the court will grant the HOA's motion to dismiss (ECF No. 75) without prejudice as to claims (2) through (4) of Nationstar's complaint (ECF No. 1), but deny the motion as to Nationstar's quiet title claim.

Further, the court will grant SFR's motion for summary judgment (ECF No. 71) as to its quiet title claim against the Banks and the borrowers, but deny the motion as to the slander of title claim; the court will dismiss SFR's claim for injunctive relief.  SFR has met its burden of demonstrating that there is no genuine dispute of material fact as to its quiet title claim against the Banks and borrowers and is entitled to judgment as a matter of law.  Thus, SFR is entitled to

a declaratory judgment that the Banks' first deed of trust was extinguished pursuant to the properly conducted foreclosure sale, where SFR purchased the property for value in the amount of $16,000.00.

Furthermore, the court will deny the Banks' motion for summary judgment.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the HOA's motion to dismiss (ECF No. 75) be, and the same hereby is, GRANTED IN PART and DENIED IN PART, consistent with the foregoing.

IT IS FURTHER ORDERED that the Banks' motion for summary judgment (ECF No. 70) be, and the same hereby is DENIED.

IT IS FURTHER ORDERED that SFR's motion for summary judgment (ECF No. 71) be, and the same hereby is, GRANTED IN PART and DENIED IN PART, consistent with the foregoing.

IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 73) be, and the same hereby is, GRANTED IN PART and DENIED IN PART, consistent with the foregoing.

IT IS FURTHER ORDERED that SFR's response to the HOA's motion to dismiss (ECF No. 78), and the HOA's reply to SFR's response (ECF No. 82) be, and the same hereby is, STRICKEN.

IT IS FURTHER ORDERED that the HOA's supplemental authority to its motion for summary judgment (ECF No. 96) be, and the same hereby is, STRICKEN.

DATED March 1, 2017.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 24 -